IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**JANET REGAN**                                                                  **PLAINTIFF**

**VERSUS**                                  **CIVIL ACTION NO. 1:12cv310-HSO-RHW**

**MICHAEL J. ASTRUE, Commissioner**
**of Social Security**                                                        **DEFENDANT**

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Janet Regan filed this action on October 11, 2012, seeking judicial review of the denial of her claim for Social Security disability benefits. Before the Court is [12] Regan's March 12, 2013 motion seeking reversal of the decision of the Commissioner of Social Security (Commissioner). The Commissioner responded to the motion June 6, 2013. [15] Regan filed no reply and the matter is ripe for ruling by the Court.

On September 14, 2009 Regan filed a Title II application for a period of disability and disability insurance benefits from January 31, 2007 until June 30, 2008, the date she was last insured for disability benefits. Regan alleged she became disabled January 31, 2007, at age 48. [8, p. 140] The claim was denied initially on January 26, 2010, and upon reconsideration on March 19, 2010. [8, pp. 95-98, 100-102] Regan has been represented by an attorney at least since the time she filed her request for a hearing on March 30, 2010. [8, pp. 103-04] Regan testified at the February 18, 2011 hearing before Administrative Law Judge (ALJ) Lanier Williams, as did vocational expert Robert E. Walker, Jr. [8, pp. 27-91]

At the time of the hearing, Regan was 52 years old and married. She has a high school education, and was last employed in January, 2007 as an "inventory specialist." She claims she left that job after approximately five months because the work became "too much…physically"

for her to complete. [8, p. 59] Regan had previously worked as a "senior operations clerk" for approximately five years, and as "private secretary to the director of retail" at the Beau Rivage Casino for approximately one year. [8, p. 59-60] She testified her work history was intermittent because for some time she cared for her ailing parents. [8, p. 62]

Regan testified she had neck surgery [8, p. 67], which her medical records reveal was a C5-C6 anterior cervical corpectomy and fusion performed September 27, 2007 by Dr. Terry Smith. [8, p. 233] Regan claims the pain relief provided by the neck surgery was fleeting [8, p. 70-71] because of the onset of other problems. Specifically, she claims she also experienced back, hip, and sciatic nerve pain and was diagnosed with Facet Syndrome. [8, p. 71] Regan testified she apparently suffered thirteen "mini-strokes" sometime in 2007 [8, p. 73], and that she has high blood pressure and numbness in her dominant left arm. [8, p. 74-75] Regan testified that subsequent to her September 2007 neck surgery she looked for employment for "several months" but by the end of October 2007, pain in her lumbar spine prevented her from searching for work. [8, p. 79] Regan claims she must rest frequently, walking no more than thirty yards at a time, and utilizing motorized carts on her weekly trips to the grocery store. [8, p. 80] She claims she cannot lift more than ten pounds and cannot read because of the strain on her neck. [8, p. 80-81] She testified she spends about two days per week exclusively in bed; on other days she can do light housework such as ironing and vacuuming, but then requires several hours of bed rest to recover from the activity. [8, p. 81-82]

Vocational expert Robert E. Walker, Jr. testified at the hearing, describing Regan's past jobs as: secretary, sedentary with a skill level of six, but stating the job was "at least light as performed" by Regan's description; cashier, light exertional with a skill level of three; correspondence review clerk, sedentary with a skill level of five. Regan's other jobs in her work

history were classified as medium and heavy exertional.  Asked to assume an individual 50 years old, with a high school education and Regan's employment history with some transferrable skills from work as a secretary and senior operations clerk, but limited to sedentary or light exertional levels with no frequent head rotation, a sit and stand option, and no frequent use of the dominant left hand for writing, Walker testified that Regan could work as a file clerk, gate tender, surveillance monitor, and storage rental clerk.  Walker also testified that there are such jobs available in both the state and national economies. [8, p. 83-89]

On July 31, 2007 Regan went to Garden Park Medical Center for headaches, and left arm and shoulder pain which she reported had been bothering her for three weeks.  [8, pp. 452, 768] Dr. Hoshall Barrett's impression from an MRI of the cervical spine without contrast on that date was that Regan had "cervical spondylosis at C5/6," and "posterior disk osteophyte complex and probably uncovertebral osteophyte ... causing impingement upon the thecal sac, spinal cord and both nerve roots, more pronounced on the left side." [8, pp. 452, 768].  A CT head scan without contrast on July 22, 2007 revealed a "small left subinsular attenuation focus may represent an old lacunar infarct or a prominent perivascular space.  Otherwise unremarkable noncontrasted CT head scan." [8, pp. 454, 770]  Cervical spine xrays taken that same day showed degenerative changes at the C5-6 disc. [8, pp. 455, 771]  A noncontrasted MRI brain scan on August 9, 2007 indicated "no specific acute abnormality of the brain identified" despite evidence of old infarcts. [8, pp. 449, 755]   By early August 2007, Dr. Rosenquist had referred Regan to a neurosurgeon, Dr. Terry Smith.  [8, p. 285]   On September 27, 2007, Dr. Smith performed surgery on Regan's neck. [8, pp. 233-34, 254-55]  During follow-up appointments with Dr. Smith, Regan indicated improvement in her pain symptoms after the surgery, and by correspondence dated December 5, 2007, Dr. Smith advised Dr. Rosenquist that Regan "says she is almost back to normal," and that

3

she "has not been taking any pain medication." Dr. Smith reported that Regan, "has normal strength, sensation, reflexes, and gait, and her incision looks good. I am glad she is improving. We talked about the future, and I will see her back as needed." [8, p. 277]

Dr. Rosenquist has treated Regan since October 18, 2005, refilling her medications and referring her for diagnostic testing such as mammography and pap examinations, bone density and thyroid scans, etc. [8, pp. 742-750] A March 24, 2006 exam indicated "normal bone mineral density." [8, p. 775] The last dated record from Dr. Rosenquist is April 21, 2008. On that day, Regan complained of arm pain but there is no further indication of disability. [8, p. 744] Dr. Rosenquist's records reveal no information concerning Regan's neck problems which is not contained in any other, earlier submitted medical records.[1] Dr. Rosenquist issued a "to whom it may concern" statement dated November 4, 2010, noting that as of May 2008, Regan's complaints were consistent with her knowledge of Regan's condition: on protracted standing/walking Regan experienced low back pain and fatigue; on protracted sitting she experienced low back pain; her pain was frequently sufficient to interfere with her concentration; at least several days per week Regan had to recline as needed for relief of low back pain; and at least once per week, Regan would have to recline much or most of the day. Dr. Rosenquist gave no indication whether looking at a computer screen or looking down to read or write exacerbated Regan's pain, and she made no findings about Regan's residual functional capacity. [8, p. 492]

Dr. Abha Mishra began treating Regan July 15, 2008 [8, p. 485], after the June 30, 2008 date last insured. On her first visit, Regan reported neck pain within the past year, with some improvement since the neck surgery performed by Dr. Smith, but stated she still had intermittent pain and parasthesias in her arms, and also in her lower extremities after physical work. Dr.

---

[1]The majority of Dr. Rosenquist's records are copies of Garden Park Hospital records, and the records of Dr. Smith.

4

Mishra suspected obstructive sleep apnea was the cause of Regan's complaints concerning her inability to sleep [8, p. 485], a problem first reported to Dr. Mishra.  Regan saw Dr. Mishra twice more in 2008, on August 12, 2008 [8, p. 482] and October 30, 2008 [8, p. 483], indicating on both occasions that her pain and fatigue symptoms were improving with continued treatment.  Not until eight months later, in June 2009, do Dr. Mishra's records indicate that Regan again complained about pain and fatigue.  [8, p. 478-79]  Dr. Mishra prescribed medication for iron deficiency anemia, and had bone density testing and xrays of the hips done, both of which proved normal.  [8, pp. 471, 474-75]  His records include an impression of "mild degenerative disc disease" on July 17, 2009, over a year after Regan's date last insured.  [8, p. 469]  Dr. Mishra's "to whom it may concern" statement of March 15, 2010 indicated that Regan complained of greater pain and need to recline than Dr. Rosenquist had noted in her statement.  Although Dr. Mishra's statement included findings about Regan's residual functional capacity, those findings were as of no particular date.  [8, p. 458]

Dr. Curtis Broussard was Regan's primary care physician after Dr. Rosenquist.  His records indicate Regan's first appointment was on October 28, 2008 and she gave a history of neuropathy, sciatica, cervical disc surgery, and 13 strokes.[2]  [8, p. 491]  She saw Dr. Broussard again on November 17, 2008 and complained of sleep problems, numbness, pain and heaviness in her arms.  [8, p. 490]  Dr. Broussard's "to whom it may concern" statement of September 2, 2010, is identical to Dr. Mishra's, including no date for the limitations listed.  [8, p. 488]

On March 29, 2011, the ALJ issued his 8-page decision on the case.  Applying the five-step evaluation process for determining disability, Judge Williams made findings, specifically cited to the record, that:

---

[2] Regan provided no reference to any medical record indicating she had 13 strokes.

    (1) Regan had not engaged in substantial gainful activity since January 31, 2007, the alleged date of onset of disability;

    (2) Regan had, through the date last insured, severe impairments of "status post neck surgery, thoracic spine and lumbar spine," which significantly interfered with her ability to perform work-related activities prior to the date last insured. Regan's complaints of "obstructive sleep apnea, fibromyalgia, restless leg syndrome [and] chest pain" were alleged after her date last insured and therefore found "not severe." [8, p. 17-18].

    (3) Through the date last insured, Regan did not have an impairment or combination of impairments that met or medically equalled any of the relevant listings of impairments;

    (4) Based on the record, claimant was capable of performing past relevant work as a cashier, light in exertional demand which did not require the performance of work-related activities precluded by the claimant's residual functional capacity.

In making his findings, the ALJ carefully evaluated Regan's testimony, which he found not wholly credible, as well as the medical evidence which indicated that Regan experienced pain relief post-neck surgery and was "almost back to normal." [8, p. 277] The ALJ's finding that Regan reported pain more severe and disabling than her medical records substantiate is amply supported by the medical evidence of record. In addition, the ALJ explains that he gave no weight to the opinions of Dr. Broussard and Dr. Mishra because neither began treating Regan until after her date last insured and because the severe limitations they assigned to Regan were not present prior to her date last insured. Review of these physicians' records supports the ALJ's findings in this regard. The ALJ concluded that Regan was not disabled under the Act. Regan sought Appeals Council review.

In addition to the record before the ALJ, the Appeals Council considered the brief submitted by Regan's counsel and Dr. Rosenquist's medical records for Regan. The Appeals Council held that the additional information provided no basis for changing the ALJ's decision.

[8, pp. 5-10]  By decision of August 13, 2012 the Appeals Council denied review, prompting Regan to file this action for judicial review.

## Standard of Review

Judicial review of a final decision of the Commissioner is limited to determining whether substantial record evidence supports the Commissioner's factual findings, and whether such findings are reached through the application of correct legal standards.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  The Court reviews the entire record to determine whether substantial evidence supports the Commissioner's decision.  *Villa*, 895 F. 2d at 1022.  Credibility of witnesses and conflicts in the evidence are issues for resolution by the Commissioner, not the Court.  It is not the Court's prerogative to substitute its judgment for that of the Commissioner or to re-weigh the evidence.  *Harris v. Apfel*, 209 F.3d at 417(quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)); *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988)(a finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision); *Selders v. Sullivan*, 914 F. 2d 614, 617 (5th Cir. 1990).  Factual findings supported by substantial record evidence are conclusive and must be upheld.  *Estate of Morris v. Shalala*, 207 F. 3d 744, 745 (5th Cir. 2000); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).  The Court may reverse a decision of the Commissioner if it is based upon faulty legal analysis, but should accept the Commissioner's legal conclusions if they are within reasonable meanings of the statutory or regulatory language.  *Chevron, U.S.A., Inc. v. Natural*

7

*Resources Defense Council*, 467 U.S. 837, 841-44 (1984). Absent a finding that the decision is unsupported by substantial evidence or that the Commissioner applied an incorrect legal standard, the Court must affirm the Commissioner's decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

Analysis

There is no dispute that Regan's disability insured status expired June 30, 2008. To be eligible for disability benefits, Regan was required to prove she became disabled prior to that date. 42 U.S.C. §§ 416(i)(3), 423(a), (c); *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981). Regan's argument that she has been disabled since June 30, 2008 [13, p. 2] is immaterial, as a showing that an impairment became disabling after expiration of her insured status is insufficient to establish eligibility for disability benefits.

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months..." 42 U.S.C. § 423(d)(1)(A). Determination of a disability claim involves a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4)(i-v). Once the claimant establishes she can no longer perform past relevant work, given her residual functional capacity, the burden shifts to the Commissioner to come forward with evidence of other jobs existing in significant numbers that claimant could perform considering her residual functional capacity, age, education and work experience. *Harrell v. Bowen*, 862 F.2d 471, 478 (5th Cir. 1988); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987). There is no dispute that the ALJ used this evaluation process to decide Regan's claim.

Regan asserts the ALJ failed to properly consider the findings of Dr. Mary Rosenquist, contending that Dr. Rosenquist's findings assign limitations, while the ALJ found otherwise. Initially, Regan did not present her medical records from Dr. Rosenquist to the ALJ, but the records were submitted to the Appeals Council [8, p. 9] which rejected her request for review.  In rejecting her request for review, the Appeals Council had to consider whether the ALJ's decision was contrary to the evidence in the record, including the newly submitted Rosenquist records. [8, p. 5]  The Appeals Council expressly found the additional evidence "does not provide a basis for changing the Administrative Law Judge's decision." [8, p. 6]  Furthermore, Dr. Rosenquist makes no clear assignment of "limitations."  Rather, the form which the doctor signed attests to the "complaints [that] were consistent with [her] knowledge and understanding of [Regan's] condition." [8, p. 492]  Dr. Rosenquist did not check either "yes" or "no" to any of the questions regarding Regan's "residual functional capacity." [8, p. 492]  Substantial evidence exists to support the ALJ's decision that Dr. Rosenquist's opinion was untimely and that it did not indicate or establish any disabling limitations on or before Regan's date of last insurance. Moreover, even had Dr. Rosenquist assigned limitations, a doctor's opinion that one is unable to work is not binding on the ALJ, and in fact such statements are not deemed medical opinions, but are instead "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case."  20 C.F.R. 416.927(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.")  Dr. Rosenquist's opinion, if any, that Regan cannot work is not entitled to special weight or analysis.  20 C.F.R. 404.1527(d)(3); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).  An ALJ may discount a treating physician's opinion if it is conclusory, or without objective medical evidence supporting it, or if it is otherwise unsupported by the record or

inconsistent with the record as a whole.  20 C.F.R. § 404.1527(c); *Perez*, 415 F.3d at 465-66.  It was the function of the ALJ to decide the credibility of witnesses and the weight to be given their testimony.  The ALJ did not err in choosing to give greater weight to the medical opinion of Regan's treating neurosurgeon Dr. Terry Smith than other physicians.  Dr. Smith stated that as of December 2007, Regan was "doing fine," and there was no reason for disability.  [8, p. 276]  The undersigned finds Regan has failed to demonstrate any error in the ALJ's decision with respect to Dr. Rosenquist.

Regan also claims the ALJ committed error in rejecting the findings of Dr. Mishra, who first treated Regan after her date last insured, but accepted the findings of another treating physician, who had not seen Regan for over six months before her date of last insurance.  [13]  The ALJ relied on Dr. Smith's records which indicate that Regan experienced gradual improvement in the months following her surgery up to December 5, 2007.  [8, p. 277]  In addition, the ALJ credited the records of Dr. Lidgia Vives-Jackson, who treated Regan from October 2007 to May 2008.  Regan's final visit to Dr. Vives-Jackson on May 19, 2008 notes a "marked improvement in pain."  [8, p. 292]  In contrast, Regan did not see Dr. Mishra until after her date last insured.  Even then, at her first visit with Dr. Mishra on July 15, 2008, Regan again indicated improvement.  [8, p. 485]  There is substantial record evidence to support the ALJ's decision to reject the undated opinion by Dr. Mishra concerning Regan's limitations, where Dr. Mishra did not begin treating Regan until after her date last insured. The undersigned finds Regan has failed to demonstrate any error in the ALJ's rejection of Dr. Mishra's opinion.

## RECOMMENDATION

Having considered the entire record of the proceedings below and controlling law, the undersigned is of the opinion that the Commissioner's final decision is supported by substantial evidence and is in accord with relevant legal standards.  Accordingly, the undersigned recommends that the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3), *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi* (Dec.1, 2011), after service of a copy of this Report and Recommendation, each party has fourteen days to serve and file with the Clerk any written objections to it.  Within seven days of service of objections, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objection.  An objecting party must specifically identify the findings, conclusions, and recommendations to which she objects; the District Court need not consider frivolous, conclusive, or general objections.  A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy is  be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion accepted by the District Court to which he did not object.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed, this the 24th day of January, 2014.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE